# In the United States Court of Federal Claims

### FOR PUBLICATION

No. 21-1941C
(Filed: March 7, 2024)

|  |  |
|---|---|
| **PAMELA MCKENNA**, | ) |
|  | ) |
| *Plaintiff,* | ) |
|  | ) |
| v. | ) |
|  | ) |
| **UNITED STATES**, | ) |
|  | ) |
| *Defendant.* | ) |
|  | ) |

*Lisa Smith Sanders*, Sanders and Sanders, Upper Marlboro, MD, for plaintiff.

*Augustus J. Golden*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant.  With him on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Patricia M. McCarthy*, Director, and *Steven J. Gillingham*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC.

### OPINION AND ORDER[1]

***BONILLA, Judge***.

      This case stems from Pamela McKenna's allegations of discrimination against her former employer, the Department of Veterans Affairs (VA).  Specifically, Ms. McKenna charges the VA breached the settlement agreement reached through formal mediation of her disability and retaliation claims before the Equal Employment Opportunity Commission (EEOC).  Pending before the Court are

---

[1] This case was transferred to the undersigned for adjudication on February 28, 2022, pursuant to Rule 40.1(b) of the Rules of the United States Court of Federal Claims (RCFC).  At that time, and continuing through October 25, 2022, the matter was stayed at the parties' joint request to allow for settlement negotiations.  Discovery continued thereafter through November 3, 2023.  Briefing on the cross-motions resolved herein was completed on March 5, 2023.  Oral argument was deemed unnecessary.

plaintiff's motion for partial summary judgment on the issue of liability (ECF 54), and defendant's cross-motion for summary judgment (ECF 55), both filed pursuant to RCFC 56. Because Ms. McKenna's claims for relief are moot or otherwise not recoverable, plaintiff's motion is DENIED and defendant's cross-motion is GRANTED.

## BACKGROUND

For over twenty years, Ms. McKenna worked as a registered nurse at the Washington (DC) VA Medical Center before retiring on October 4, 2019. More than two years prior to her retirement, on June 23, 2017, Ms. McKenna filed an employment discrimination claim with the EEOC, alleging a disability and retaliation for having engaged in protected activity. The parties resolved the matter through mediation on April 16, 2019.

According to the terms of the parties' settlement agreement, executed in August and September 2019, Ms. McKenna withdrew her EEOC complaint in exchange for the following:

- A $50,000 lump sum payment;

- Restoration of 300 hours of annual leave and 100 hours of sick leave; and

- The VA's commitment "[n]ot to contest or oppose [Ms. McKenna's] application for disability retirement . . . and to promptly submit any documents requested by [the Office of Personnel Management (OPM)] to process [her] application for disability retirement."

ECF 55-1 at 2–3. In the weeks that followed, the parties executed an addendum to the agreement, clarifying: Ms. McKenna could not cash in her accrued unused sick leave upon retirement, but could instead add the hours to her creditable time in service; the Defense Finance and Accounting Service (DFAS) was responsible for the timing of the accrued unused annual leave payout; and Ms. McKenna would tender her notice of retirement effective October 4, 2019, on or before that date.

Consistent with the amended settlement agreement, Ms. McKenna received the $50,000 lump sum payment on September 24, 2019, and retired on October 4, 2019. OPM subsequently approved Ms. McKenna's disability retirement application on December 30, 2019. According to Ms. McKenna, she received an initial retirement annuity payment in April 2020, and then began receiving smaller than expected monthly retirement annuity payments starting in July 2020. As disclosed in OPM's December 30, 2019 notice to Ms. McKenna, disability retirement under the Federal Employees' Retirement System (FERS) automatically converts to *regular* FERS

2

retirement when the annuitant reaches age sixty-two.  From that point on, the annuity is recalculated based upon years of creditable service.  Critical here, in the intervening months between the resolution of the EEOC matter and her retirement, Ms. McKenna celebrated her sixty-second birthday.  Accordingly, despite OPM's approval of Ms. McKenna's disability retirement application, she never qualified for the enhanced retirement annuity as a matter of law.

Within a month of her retirement, on November 1, 2019, Ms. McKenna filed an administrative claim with the VA, alleging a breach of the settlement agreement. She sought immediate payout for her accrued unused annual leave and assurances she would receive a disability–rather than regular–retirement annuity.[2]  The VA denied Ms. McKenna's administrative claim by letter dated December 17, 2019, explaining that DFAS was accountable for calculating and remitting the accrued unused annual leave payout, whereas OPM was solely responsible for decisioning and processing Ms. McKenna's retirement application.  The payout of Ms. McKenna's accrued unused annual leave in the pre-tax amount of $15,498 took nearly three years and was finally remitted by DFAS on November 5, 2022.

Ms. McKenna filed this breach of contract action in the United States District Court for the District of Columbia on November 24, 2020.  *See McKenna v. Wilkie*, No. 20-3414 (D.D.C.).  On July 26, 2021, the district court transferred the matter to the Court of Federal Claims, finding this Court had exclusive jurisdiction over the alleged breach of the settlement agreement.  In addition to enforcing the terms of the settlement agreement, Ms. McKenna seeks unspecified consequential damages and approximately $9,400 in attorney's fees.

## DISCUSSION

### I.   Standard of Review

"[A court's] lack of jurisdiction to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy."  *Liner v. Jafco, Inc.,* 375 U.S. 301, 306 n.3 (1964) (citation omitted); *see* U.S. Const. art. III, § 2 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties . . . [and] to Controversies to which the United States shall be a Party . . . .").  A case becomes moot when it has "lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law."  *Gerdau Ameristeel Corp. v. United States*, 519 F.3d 1336, 1340 (Fed. Cir. 2008) (quoting *Hall v. Beals*, 396 U.S. 45, 48 (1969)).  Relevant here, "to avoid dismissal for mootness, an actual controversy

---

[2] As noted *supra*, by this point, the VA remitted to Ms. McKenna the $50,000 lump sum payment.

must remain at all stages, not merely at the time the complaint is filed." *Id.* (citing *Steffel v. Thompson*, 415 U.S. 452, 460 n.10 (1974)).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A "genuine dispute" exists where a reasonable factfinder "could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts," in turn, are those "that might affect the outcome of the suit." *Id.* In deciding motions for summary judgment, the Court must draw all inferences in the light most favorable to the nonmoving party, evaluating each motion on its own merits. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987).

The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That burden can be met by showing "there is an absence of evidence to support the nonmoving party's case." *Dairyland Power Co-op. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "Once the moving party has satisfied its initial burden, the opposing party must establish a genuine issue of material fact and cannot rest on mere allegations, but must present actual evidence." *Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1375 (Fed. Cir. 2002) (citing *Anderson*, 477 U.S. at 248). Summary judgment is warranted when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587.

## II.   Remunerations and Retirement

The three material terms of the settlement agreement, as amended, include: (1) a $50,000 lump sum payment; (2) restoration of 300 hours of accrued annual leave and 100 hours of accrued sick leave, with DFAS slated to process and pay out the unused annual leave; and (3) the VA's agreement not to oppose, and to assist in completing any requested paperwork for, OPM's consideration of Ms. McKenna's application for a federal disability retirement. With respect to the first term, the record makes clear Ms. McKenna received the $50,000 lump sum payment on September 24, 2019, prior to her retirement. Accordingly, the principal issues remaining in this breach of contract action relate to the restoration of leave and the VA's facilitation of Ms. McKenna's application for a disability retirement. While neither issue reflects the government's finest hour, the VA complied with the literal terms of the parties' agreement, effectively rendering Ms. McKenna's claims moot.

### A. *Leave Restoration and Payout*

In April 2019, the VA agreed in principle to restore 300 hours of accrued annual leave and 100 hours of accrued sick leave to Ms. McKenna.  The parties memorialized the leave restoration in their formal settlement agreement executed in August and September 2019.  Importantly, the parties immediately clarified in an addendum that Ms. McKenna could only cash out her unused accrued *annual* leave since, by law, unused accrued *sick* leave can only be credited to time in service.  Concomitantly, the parties acknowledged that DFAS would be solely responsible for calculating, processing, and remitting the lump sum payment for Ms. McKenna's unused accrued annual leave.   To facilitate the restoration of the agreed upon accrued leave, Ms. McKenna twice submitted to the VA the requested corrected and certified timecards on August 21 and September 27, 2019.  Notwithstanding Ms. McKenna's timely submissions, follow-up requests, administrative claim, and federal lawsuit, DFAS did not remit the $15,498 payout until November 5, 2022.

### B. *Disability Retirement*

Ms. McKenna maintains she and the VA negotiated and agreed to a federal disability retirement with the commensurate annuity.  Following her October 4, 2019 separation, and despite OPM's subsequent approval of her application for a *disability* retirement, Ms. McKenna discovered her actual annuity payments reflected a *regular* retirement under FERS.  According to Ms. McKenna, the monthly annuity payments she received and continues to receive are less than half what she expected based upon preliminary calculations performed during the application process.  Ms. McKenna charges that the VA negotiated in bad faith by offering her a disability retirement when they knew or should have known she would be ineligible shortly after the agreement was finalized.  Given her age at the time, Ms. McKenna proffers the VA purposefully withheld or otherwise remained silent on the import of her approaching birthday until after her separation from federal service.

Although the timeline presented in this case is unfortunate, the documented facts contradict Ms. McKenna's version of events and requested relief.  As an initial matter, as quoted *supra*, the parties' settlement agreement guaranteed Ms. McKenna neither disability retirement nor the corresponding disability retirement annuity.  The VA's commitments in this regard were plain: "Not to contest or oppose [Ms. McKenna's] application for disability retirement . . . and to promptly submit any documents requested by OPM to process [the] application for disability retirement." ECF 55-1 at 2–3.  There is nothing in the record–and Ms. McKenna has failed to credibly allege–that the VA contested or opposed her application for disability retirement or otherwise failed to promptly submit requested documents to OPM as her application was processed.   In fact, the record shows OPM *approved* Ms. McKenna's application for disability retirement within sixty days of submission.

5

The VA has therefore fulfilled its obligations under the express terms of the settlement agreement.

Ms. McKenna's claims that the VA made an illusory promise are similarly misplaced. When the parties concluded mediation in April 2019 and executed the formal settlement agreement in August and September 2019, Ms. McKenna was sixty-one years of age. She turned sixty-two days *after* the addendum was executed and thus remained eligible for both a disability retirement and the increased annuity throughout the course of negotiations. Moreover, OPM's public website includes exhaustive information about disability retirement under FERS and the divergent computations of benefits before and after a retired annuitant reaches the age of sixty-two.[3] As noted *supra*, this information was highlighted in OPM's December 30, 2019 letter to Ms. McKenna approving her disability retirement. Lastly and importantly, Ms. McKenna was represented by counsel throughout the EEOC proceedings. Taken together, these facts fall well short of the necessary showing of "clear and convincing evidence of bad faith to overcome the presumption that the government acted in good faith." *See Bannum, Inc. v. United States*, 151 Fed. Cl. 755, 769 (2021) (citing *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239 (Fed. Cir. 2002)).

### C. Consequential Damages and Attorney's Fees

Acknowledging DFAS's eventual payout of the agreed upon unused accrued annual leave and OPM's ultimate approval of her application for disability retirement at the regular annuity amount, Ms. McKenna nevertheless seeks unspecified consequential damages. In support, she cites the agency's three-year processing delay and the delta in monthly retirement payments she expected, which impacted her ability to meet daily living expenses.

Ms. McKenna's claims for general compensatory damages are belied by the facts of this case and contrary to the law of this Circuit:

> The general rule in common law breach of contract cases is to award damages that will place the injured party in as good a position as he or she would have been in had the breaching party fully performed. However, remote and consequential damages are not recoverable in a common-law suit for breach of contract . . . especially . . . in suits against the United States for the recovery of common-law damages, such as the instant case.

---

[3] *See* https://perma.cc/95LA-EC3W (discussing disability retirement compensation and supplying examples of contrasting retirement annuity calculations dependent upon whether the retired annuitant is under or has attained the age of sixty-two) (last visited Mar. 6, 2024).

*Wells Fargo Bank N.A. v. United States*, 88 F.3d 1012, 1021 (Fed. Cir. 1996) (citations and quotations omitted).  As explained *supra*, the VA fully performed under the express terms of the settlement agreement reached with Ms. McKenna, rendering her claims moot or otherwise not recoverable.  She is not entitled to ancillary relief.

To that end, Ms. McKenna's demand for attorney's fees is similarly without merit.  It is axiomatic that "[c]ounsel fees and other litigation expenses are not recoverable as breach of contract damages absent a specific authorization."  *See C.B.C. Enters., Inc. v. United States*, 24 Cl. Ct. 1, 5 (1991) (citing cases).  The sole potential avenue for relief lies in the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A).  "The EAJA is a fee-shifting statute that allows a party who prevails in a civil action brought by or against the government to recover attorney's fees and costs."  *Davis v. Nicholson*, 475 F.3d 1360, 1363 (Fed. Cir. 2007) (citing 28 U.S.C. § 2412(d)(1)(A)).  To qualify as a "prevailing party" plaintiff must "receive[] at least some relief on the merits of [their] claim." *Id*. (citation omitted) (cleaned up).  However, even if this test is met, recovery is not available where "the position of the United States was substantially justified . . . ."  *See* 28 U.S.C. § 2412(d)(1)(A).  In dismissing Ms. McKenna's claims as moot or otherwise not recoverable, notwithstanding the disconcerting timeline presented, the Court necessarily finds she is not a prevailing party and, further, that the government's position is substantially justified.

## CONCLUSION

The VA's compliance with the express terms of the EEOC settlement agreement renders principal issues in this case moot and thus outside the Court's jurisdiction under RCFC 12(h)(3).  As no legal authority supports Ms. McKenna's remaining claims, her motion for partial summary judgment on the issue of liability (ECF 54) is **DENIED** and defendant's cross-motion for summary judgment (ECF 55) is **GRANTED**.  The Clerk of Court shall enter Judgment accordingly.  No costs.

It is so **ORDERED**.

Armando O. Bonilla
Judge